# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| NEIL SILVER, | * |
| | * |
| Petitioner, | *   No. 20-141V |
| | * |
| v. | *   Special Master Christian J. Moran |
| | * |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | *   Filed: March 3, 2023 |
| | * |
| | *   Redaction |
| Respondent. | * |
| | * |

* * * * * * * * * * * * * * * * * * * *

*Ira M. Newman*, Sanocki, Newman & Turret, LLP, New York, NY, for petitioner,
*Nina Ren*, United States, Dep't of Justice, Washington, DC, for respondent.

## ORDER DENYING MOTION FOR REDACTION[1]

Neil Silver alleges that an influenza vaccination caused him to develop Guillain-Barré syndrome. Pet., filed Feb. 10, 2020. A ruling, issued on December 16, 2022, determined when Mr. Silver began to experience neurologic problems. Pursuant to 42 U.S.C. § 300aa–12(d)(4) and Vaccine Rule 18(b), he filed a short motion requesting redaction of the name of his witnesses and medical providers contained in the ruling. For the reasons explained below, the motion is DENIED.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this order on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

**Public Access to Information about Petitioners in the Vaccine Program**

The history of public access to information contained in court decisions and the history of the creation of the Vaccine Program[2] provide a context for Mr. Silver's motion to redact. Both histories suggest that redaction is available in relatively limited circumstances.

In American jurisprudence, the public can generally access court documents. Nixon v. Warner Comm. Inc., 435 U.S. 589, 597 (1978). As part of this country's inherited traditions, Congress may be presumed to know this principle.

In the mid-1980s, Congress investigated vaccines because of concerns about their safety and to stabilize the market for manufacturers. Bruesewitz v. Wyeth, LLC., 562 U.S. 223, 226 (2011). In the 99th Congress, competing proposals were introduced. See Figueroa v. Sec'y of Health & Human Servs., 715 F.3d 1314, 1323 (Fed. Cir. 2013), Vijil v. Sec'y of Health & Human Servs., No. 91-1132V, 1993 WL 177007, at *4-5 (Fed. Cl. Spec. Mstr. May 7, 1993).

One of these proposals, which was introduced on April 2, 1985, was Senate Bill 827. S. 827 would have created a compensation program located in the District Court for the District of Columbia in which special masters would preside. S. 827, 99th Cong., § 2104(b), § 2104(d)(1) (1st Sess. 1985). In addition to a compensation program, S. 827 contained provisions to improve the safety of vaccines. However, the first session of the 99th Congress adjourned without acting on any of the proposed legislation.

In the second session of the 99th Congress, the House and Senate considered different bills. The version of S. 827 from September 24, 1986 proposed to improve the safety of vaccines. S. 827, 99th Cong. (2d Sess. 1986). It appears that S. 827 did not include a compensation program.

However, the legislation that Congress eventually enacted did contain a compensation program. Congress placed adjudication of vaccine compensation program claims in the district courts. Pub. L. 99-660 § 2112(a). In this legislation, provisions related to discovery and disclosure of information were combined in one section. Id. at § 2112(c), codified at 42 U.S.C. § 300aa–12(c)(2) (1988).

---

[2] For information about the legislation that created the Vaccine Program, this order draws upon a summary provided in Lainie Rutkow et al., Balancing Consumer and Industry Interests in Public Health: The National Vaccine Injury Compensation Program and Its Influence During the Last Two Decades, 111 Penn St. L. Rev. 681 (2007).

Congress's selection of district courts with their tradition of openness to the public suggests that Congress intended for the normal rules about access to judicial decisions to apply. Castagna v. Sec'y of Health & Human Servs., No. 99-411V, 2011 WL 4348135, at *1 (Fed. Cl. Spec. Mstr. Aug. 25, 2011).

In 1987, Congress simultaneously funded the Vaccine Program and amended the Vaccine Act. The 1987 amendments did not vary the disclosure provisions. However, in 1987, amendments changed the venue for filing claims from the district courts to the Claims Court. Pub. L. 100-203 § 4307(1); see also Milik v. Sec'y of Health & Human Servs., 822 F.3d 1367, 1375 (Fed. Cir. 2016); Stotts v. Sec'y of Health & Human Servs., 23 Cl. Ct. 352, 358 n.7 (1991).

The Vaccine Program became effective on October 1, 1988. Pub. L. 100-203 § 4302. As initially conceived, special masters were issuing reports, subject to de novo review by judges of the Claims Court. See 42 U.S.C. § 300aa–12(d) (1988). In this context, reports from special masters and decisions from Claims Court judges started to become available to the public. E.g., Bell v. Sec'y of Health & Human Servs., 18 Cl. Ct. 751 (1989) (reproducing special master's report); Philpott v. Sec'y of Health & Human Servs., No. 88-20V, 1989 WL 250073 (Cl. Ct. Spec. Mstr. Aug. 4, 1989).

Congress found that the parties were too litigious in the early years of the Program. H.R. Rep. No. 101-386, at 512 (1989) (Conf. Rep.), reprinted in 1989 U.S.C.C.A.N. 3018, 3115. Congress amended the Vaccine Program in 1989, giving special masters the authority to issue decisions, which could be subject to a motion for review. Pub. L. 101-239 § 6601(h), codified at 42 U.S.C. § 300aa–12(d) and (e).

Congress also added a provision allowing limited redaction of decisions of special masters. Pub. L. 101-239 § 6601(g)(2). The reason Congress added this provision is not clear. See Anderson v. Sec'y of Health & Human Servs., No. 08-396V, 2014 WL 3294656, at *2 n.7 (Fed. Cl. Spec. Mstr. June 4, 2014).

Although Congress authorized redaction of decisions, few litigants requested redaction for many years. Special masters tended to allow redaction without much analysis. After a surge in requests for redaction, the then-Chief Special Master issued an order generally narrowing redaction. Langland v. Sec'y of Health & Human Servs., No. 07-36V, 2011 WL 802695 (Fed. Cl. Spec. Mstr. Feb. 3, 2011). On a motion for review, the Court of Federal Claims endorsed the special master's analysis regarding redaction in a brief footnote. 109 Fed. Cl. 421, 424 n.1 (2013).

The Court of Federal Claims analyzed the special masters' position regarding redaction more extensively in W.C. v. Sec'y of Health & Human Servs., 100 Fed. Cl. 440, 456-61 (2011), aff'd on nonrelevant grounds, 704 F.3d 1352 (Fed. Cir. 2013). W.C. disagreed with the approach taken and asserted that the Freedom of Information Act ("FOIA") was a basis for evaluating redaction requests.

Shortly after W.C., the then-Chief Special Master issued another order regarding redaction. Castagna explored the topic in more depth and, again, found redaction was limited to narrow circumstances. 2011 WL 4348135.

After those orders were issued, the Court of Federal Claims has found special masters were not arbitrary and capricious in either denying redaction, or permitting redaction. Spahn v. Sec'y of Health & Human Servs., 133 Fed. Cl. 588, 604 (2017) (stating that the decision to redact is a question of law and holding that redaction of "the names of petitioner . . . and petitioner's treating physicians . . . are not the kind of medical, or confidential, or privileged, financial information that the Vaccine Act requires to be withheld from public view"); Lamare v. Sec'y of Health & Human Servs., 123 Fed. Cl. 497 (2015); R. K. v. Sec'y of Health & Human Servs., 125 Fed. Cl. 276 (2016); see also Tarsell v. United States, 133 Fed. Cl. 805 (2017) (denying petitioner's request to redact the names of all medical providers from the Court's Opinion and Order).[3]

Against this background, Mr. Silver filed his motion to redact.

### Procedural History Leading to the Motion to Redact

Mr. Silver alleged that an influenza vaccination caused him to suffer Guillain-Barré syndrome. Pet., filed Feb. 10, 2020. The Secretary disputed when Mr. Silver began having neurologic problems. This dispute led to a hearing during which Mr. Silver and other witnesses testified. A Ruling resolved those disputes.

The Ruling has not been made available to the public. The public's access depends upon the outcome of Mr. Silver's December 27, 2022 motion to redact.

Mr. Silver's motion to redact, which was accompanied by a proposed redacted version of the Findings of Fact, requested that the name of witnesses and

---

[3] Although the caption to the order in Tarsell identifies the "United States" as the respondent, the "Secretary of Health and Human Services" is the respondent in Vaccine Program cases. 42 U.S.C. § 300aa–12(b)(1).

4

his medical providers be reduced to initials. Pet'r's Mot., filed Dec. 27, 2022. Mr. Silver did not request redaction of his own name. The motion to redaction was two paragraphs and was not accompanied by any evidence such as an affidavit.

The Secretary filed a response. After reviewing the legal basis for any motion for redaction, including Langland and W.C., the government refrained from taking any position. Resp't's Resp., filed Jan. 3, 2023. With that submission, Mr. Silver's motion for redaction is ready for adjudication.

## Standards for Adjudication

For all issues, including evaluating a motion for redaction, the special master's duty "is to apply the law." Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1280 (Fed Cir. 2005). With respect to issues of public access to judicial decisions, the preferences of the parties are not binding. Reidell v. United States, 47 Fed. Cl. 209 (2000) (declining to vacate underlying decision as parties requested in settling the case).

For redaction, the starting point is the Vaccine Act. Congress provided:

> a decision of a special master or the court in a proceeding shall be disclosed, except that if the decision is to include information –
>
> (i) which is trade secret or commercial or financial information which is privileged and confidential, or
>
> (ii) which are medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy,
>
> and if the person who submitted such information objects to the inclusion of such information in the decision, the decision shall be disclosed without such information.

42 U.S.C. § 300aa–12(d)(4)(B). As previously mentioned, Congress added this provision to the Vaccine Act as part of the 1989 amendments. Pub. L. 101-239 § 6601(g)(2). In the ensuing 30 years, the Federal Circuit has not had an occasion to interpret this statutory provision. Furthermore, the associated Vaccine Rule, Vaccine Rule 18(b), simply mirrors the statute. Thus, there is an absence of binding authority about the meaning of the Vaccine Act's disclosure provision.

## Analysis

Mr. Silver has presented no argument as to why redaction is appropriate. Without any justification, granting the motion for redaction would be difficult.

Assuming for the sake of argument that the identity of Mr. Silver's witnesses and his medical providers could somehow be construed as falling into the category of "medical files and similar files," Mr. Silver would still be required to demonstrate that the disclosure would "constitute a clearly unwarranted invasion of privacy." Here, Mr. Silver has not submitted any reasons why disclosing the people whom he called to testify would be an invasion of privacy, let alone a "clearly unwarranted" one. "Witnesses have no rights under the statute and also no legal justification for redaction of their names." Windhorst v. Sec'y of Health & Hum. Servs., No. 13-647V, 2017 WL 728045, at *4 (Fed. Cl. Jan. 10, 2017).

Similarly, Mr. Silver has not justified why disclosing the names of doctors who treated him should be redacted. Tarsell, 133 Fed. Cl. at 807 ("Names of treating physicians and facilities are routinely disclosed in this Court's decisions reviewing Special Master's decisions.") (citations omitted); Anderson, 2014 WL 3294656, at *4 ("the vast majority of special masters' decisions reflect the names of treating physicians, and that no evidence of negative effects on doctor-patient relationships has been proffered").

## Conclusion

Mr. Silver's December 27, 2022 motion for redaction of the December 16, 2022 Ruling is DENIED. Furthermore, this order, too, will become available to the public after the time for the parties to propose redactions has passed.

**IT IS SO ORDERED**.

s/Christian J. Moran<br>
Christian J. Moran<br>
Special Master